**COMMUNITY HOSPITAL OF ROANOKE VALLEY, et al., Plaintiffs,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 83–0718–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

April 24, 1984.

---

Daniel S. Brown, T. Daniel Frith, III, Hazlegrove, Dickinson, Rea, Smeltzer & Brown, Roanoke, Va., for plaintiffs.

Karen Breeding Peters, Asst. U.S. Atty., Alexandria, Va., Beverly Dennis, III, Regional Atty., Javier Arrastia, Asst. Regional Atty., Dept. of HHS, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

TURK, Chief Judge.

This case is before the court on cross-motions for summary judgment. Plaintiffs are acute care general hospitals in the Commonwealth of Virginia. They are certified "providers" under the Medicare program, 42 U.S.C. § 1395x(u) and as such, are entitled to reimbursement by Medicare for the "reasonable cost" [1] of services provided to Medicare beneficiaries.

Plaintiffs are challenging the validity of an interpretive policy statement issued by the Deputy Administrator of the Health Care Financing Administration (HCFA), which affects the extent to which hospitals will be reimbursed under the Medicare program. They seek declaratory and injunctive relief and sums due under 42 U.S.C. § 1395 *et seq.*,[2] the Medicare statute and 5 U.S.C. § 706 of the Administrative Procedure Act.[3]

Medicare reimbursement is determined by apportioning a hospital's total allowable direct and indirect costs between Medicare and non-Medicare patients. The method of apportionment mandated depends on the type of services rendered and is based upon a series of "average costs" determined under regulations and guidelines issued in compliance with the Medicare statute.

---

1. Payment to qualified providers under Medicare is made either directly or through fiscal intermediaries pursuant to contract with the Secretary. 42 U.S.C. § 1395h. At the close of its fiscal year, a provider submits a "cost report" which apportions costs between Medicare and non-Medicare patients. 42 C.F.R. § 405.406(b) and § 405.453(f). The intermediary conducts an audit and issues a determination of program reimbursement. An appeal from this determination may be taken to the Provider Reimbursement Review Board (PRRB or Board). 42 U.S.C. § 1395oo. The Board is bound by the Secretary's reimbursement regulations in determining such appeals. 42 C.F.R. § 405.1867. The fiscal intermediary for plaintiffs in this case is the Blue Cross Association which subcontract-ed certain of its responsibilities to local Blue Cross organizations.

2. Section 1395oo (f)(1) provides in part for judicial review of final decisions of the Provider Reimbursement Review Board or of the Secretary.

3. 5 U.S.C. § 706 specifies in pertinent part:
   The reviewing court shall—
   (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
   (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ...

Hospital services are segregated into three categories for purposes of determining "average costs." One category covers routine services in general care areas; the second covers routine services in special care areas, such as intensive care or coronary care units; the third covers all ancillary services, such as x-ray and lab analysis for which an additional charge is generally made. 42 C.F.R. § 405.452(d)(3)). Average costs are determined separately for each category to reflect the different cost factors associated with the treatment of patients in each of the three hospital areas. It is the calculation of general routine patient care costs which plaintiffs challenge here.

"Routine care costs" are costs incurred for providing routine services to patients in normal hospital beds, including the room, normal dietary and nursing services, minor supplies, and other services for which a separate charge is not customarily assessed. 42 C.F.R. § 405.452(d)(2) (1981). Even though labor/delivery room services are not "routine," section 2345 of the Provider Reimbursement Manual (PRM) (HIM–15) requires that patients in the labor and delivery room, or in other ancillary areas at the midnight census hour, be classified and counted as "inpatients" (that is, as patients receiving routine care) when calculating the average cost of routine care. Once the inpatient count is determined, the total allowable inpatient costs for routine services is divided by the total number of inpatient days of routine care. This formula yields the average or "per diem" cost for routine patient care. The per diem figure is then multiplied by the total number of Medicare inpatient days to determine a hospital's reimbursement for general routine services. 42 C.F.R. § 405.-452(d)(2). This method of apportionment is illustrated by the following formula:

STEP 1 – $\dfrac{\text{TOTAL COST OF ROUTINE SERVICES}}{\text{TOTAL \# OF "INPATIENT DAYS"}}$ = AVERAGE COST "PER DIEM" (of general routine services)

STEP 2 – AVERAGE COST X NUMBER OF DAYS = AMOUNT OF
"PER DIEM" OF CARE RENDERED REIMBURSEMENT
TO MEDICARE
BENEFICIARIES

---

While this formula requires counting labor/delivery room patients as "inpatients" receiving routine care, it does not offset this inclusion with the *costs* of labor/delivery room services furnished to those same patients.[4] It is undisputed that this treatment of labor and delivery room patients reduces the amount of reimbursement plaintiffs receive.[5]

**4.** Patients in the labor/delivery room area are not deemed to occupy "routine" beds, nor do they receive "routine" services. Under the applicable regulations and the PRM these patients are treated as receiving "ancillary" services. PRM § 2202.8. Thus, it is clear that these labor/delivery room costs cannot be included in the routine costs formula under the regulations.

**5.** This result can be illustrated assuming the following figures in the two step apportionment calculation:

STEP 1 – $\dfrac{\$100,000 \text{ total cost of routine services}}{100 \text{ total \# of "inpatient days"}}$ = $1000 Avg. cost "per diem"

STEP 2 – $1000 Avg. cost "per diem" X 50 Medicare patient days = $50,000 reimbursement.

---

When the number of "inpatient days" is increased to 200, however, the resulting reimbursement amount is reduced significantly:

Several of the hospitals excluded labor and delivery room patients from the calculation of routine care costs on their cost reports to the fiscal intermediary. This "accounting" was refused by the intermediary pursuant to the policy of HIM–15 § 2345. The remaining hospitals complied with the policy but joined with the non-complying hospitals in challenging the policy before the PRRB. The Board sustained the position of the non-complying hospitals and overturned the intermediary. (PRRB Decision 83–056 at Adm.Rec. 82–86.) The PRRB decided, however, that it lacked jurisdiction to determine the substantive accounting issue as to the complying hospitals. (Adm.Rec. 83) The PRRB then requested and obtained agency review of its decision. The Deputy Administrator[6] of the HCFA reversed the Board on the substantive accounting issue and affirmed the Board's denial of jurisdiction over the complying hospitals.

Both complying and non-complying hospitals seek judicial review of the Deputy Administrator's decision. They claim that the reimbursement scheme mandated by HIM–15 § 2345 is "arbitrary and capricious," an "abuse of discretion" and not in accordance with the applicable law. 42 U.S.C. § 1395 oo (f)(1), 5 U.S.C. § 706. The substance of plaintiffs complaint is that the labor/delivery room policy violates the requirement that Medicare reimburse reasonable costs actually incurred, 42 U.S.C. § 1395x(v)(1)(A), 42 C.F.R. § 405.402(b)(3), and the prohibition against subsidization of Medicare costs by non-Medicare patients,

42 U.S.C. § 1395x(v)(1)(A)(i), 42 C.F.R. § 405.402(a).

Before reaching the merits of the case, the court must address the threshold question of jurisdiction over the hospitals who complied with the labor/delivery room policy and submitted cost reports which included labor and delivery room patients in their inpatient count.

The defendant claims that the jurisdictional statute, 42 U.S.C. § 1395oo (a), allows judicial review only to those hospitals who claimed disputed costs in the reports they submitted to their fiscal intermediaries. Without such a claim, according to the defendant, the Board lacked jurisdiction to hear a provider's dispute as to the amount of its Medicare reimbursement. Consequently, the defendant seeks to limit this court's review of the complying hospitals's claims to a determination of whether the PRRB was correct in deciding it lacked jurisdiction to grant a hearing on their claims. Defendant's Motion for Summary Judgment at 27, 28. The court does not agree with these contentions.

42 U.S.C. § 1395oo (a) affords a provider the right to a "hearing with respect to [its] cost report by the PRRB," if it is "dissatisfied with a final determination" of its fiscal intermediary with respect to the "amount of total program reimbursement due the provider for the items and services furnished to Medicare beneficiaries.[7]" 42 U.S.C. § 1395oo (d) provides that the Board shall have the power to affirm, modify, or reverse a final determination

STEP 1 – $\dfrac{\$100{,}000 \text{ total cost of routine services}}{200 \text{ total \# of "inpatient days"}}$ = $500 Avg. cost "per diem"

STEP 2 – $500 Avg. cost "per diem" X 50 Medicare patient days = $25,000 reimbursement.

---

**6.** The Secretary has the authority to affirm, reverse or modify the decision of the PRRB. 42 U.S.C. § 1395oo (f)(1). That authority was delegated to the Administrator of the Health Care Financing Administration and then redelegated to the Deputy Administrator of the HCFA.

**7.** Section 1395oo (a) provides in pertinent part: Any provider of services which has filed a required cost report within the time specified

in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board ... if (1) such provider—

(A) is dissatisfied with a final determination of the ... fiscal intermediary ... as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment

of the fiscal intermediary with respect to a cost report *and to make any other revisions on matters covered by such cost report even though such matters were not considered by the intermediary in making such final determination.* (Emphasis supplied).

Therefore, neither the act, nor the applicable regulations require a provider to violate agency policy and effect a "self-disallowance" of costs when submitting a cost report as a prerequisite to Board jurisdiction or judicial review. *See* 42 C.F.R. § 405.-1835, § 405.1837. That is, an adjustment by the intermediary is not required for jurisdiction. In an analogous case, *St. Mary of Nazareth Hospital Center v. Dept. of Health and Human Services,* 698 F.2d 1337 (7th Cir.) *cert. denied,* —— U.S. ——, 104 S.Ct. 107, 78 L.Ed.2d 110 (1983) (affirming *St. James Hospital v. Harris,* 535 F.Supp. 751 at 760 (N.D.Ill.1981) on the jurisdictional issue) the appeals court addressed the question of district court jurisdiction to decide whether bedside telephones of hospital patients were "personal comfort" items (which are not reimbursable) within the meaning of the Medicare Act. Like the instant case, some of the hospitals in the *St. Mary's* group appeal had "self-disallowed" the costs of bedside telephones as required by the Secretary's interpretation of the applicable regulations when they filed their cost reports. In rejecting the Secretary's argument that the statute requires an initial presentation of disputed costs to the fiscal intermediary before a hospital is entitled to a hearing by the Board the court held:

> [§ 1395oo (d) ] vests broad authority in the Provider Reimbursement Review Board to review the finding of the fiscal intermediary and make any adjustment to the cost reports the Board deems necessary. As the statute itself expressly states, the Board may consider any matter even though such matters were not considered by the intermediary in making such final determination. Therefore, the

may be made under this title for the period

statute allows the Board to consider matters outside of the cost reports ....

*Id.* at 1346.

Furthermore, since § 1395oo is the exclusive means of judicial review in this case, the presumption of reviewability of administrative decisions mandates jurisdiction in the absence of clear and convincing evidence that Congress intended to limit judicial review. *Arlington Hospital v. Schweiker,* 547 F.Supp. 670, 677 (E.D.Va. 1982) (appeal filed No. 82–1946 (4th Cir. Oct. 20, 1982) *See also Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975). The court believes that the defendant has not overcome this presumption.

Accordingly, the court concludes that jurisdiction is properly vested as to all the plaintiffs. The court now proceeds to consideration of the merits of the case.

■ The standard of review applicable to a challenge to agency policy is the "arbitrary and capricious" standard of the Administrative Procedure Act, 706(2)(A). Under this section, an agency's action is to be affirmed if it has a rational basis in the record. The court is not permitted to substitute its judgment for that of the agency. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). That is, the agency's interpretation of its regulations should not be set aside just because the court believes a better interpretation exists. *Psychiatric Institute of Washington D.C. Inc. v. Schweiker,* 669 F.2d 812 (D.C.Cir.1981).

■ The Deputy Administrator maintains that the labor/delivery room policy is a reasonable interpretation of the applicable regulations, and is supported by "substantial evidence" in the record. He urges the court to defer to the agency's expertise in interpreting its own regulations. The court does not agree and, with the limited scope of review in mind, is of the opinion that it is unreasonable, irrational and inconsistent with the Medicare statute and regulations to include labor/delivery room pa-

covered by such cost report....

tients in the per diem count without concomitantly including the costs those patients generate. In reaching this conclusion, the court finds persuasive the reasoning of the Court of Appeals for the District of Columbia Circuit in *St. Mary of Nazareth Hospital Center v. Schweiker*, 718 F.2d 459 (1983). In that case, the Court reviewed the labor/delivery room policy of HIM–15 § 2345 and held that

> it is irrational to apportion to labor/maternity patients costs which they have not incurred without either including the costs that they have incurred or demonstrating that the distortion is balanced by some other aspect of the accounting process. Because labor/delivery area costs are not included in the calculation of the average routine cost per diem and because there is no evidence that this imbalance is made up elsewhere, non-Medicare payors are forced to bear some of the costs of the Medicare program. This is a concrete violation of the constraints placed on the Secretary's discretion in promulgating regulations....

Id. at 473–474.

The Court of Appeals remanded the case to the district court with instructions for remand to the PRRB for the limited purpose of taking evidence on the issue of whether the use of other ancillary services by Medicare beneficiaries at the census-taking hour sufficed to compensate for the dilution of Medicare reimbursement caused by including labor/delivery patients in the calculation of average general routine costs per diem. Absent substantial evidence to support such a contention, the Secretary was directed to exclude labor/delivery room patients, who have not that day received routine services, from the inpatient count used to derive the average cost per diem for general routine services.

## CONCLUSION

The court concludes that it has jurisdiction over all plaintiffs in the group appeal. The policy of HIM–15 § 2345 is not supported by substantial evidence in the record and must, therefore be remanded to the Secretary for further consideration. An appropriate Order will be entered accordingly.