UNIVERSITY OF MICHIGAN HOSPI-
TALS, Borgess Medical Center, Clinton
Memorial Hospital, Cottage Hospital of
Grosse Pointe, Detroit-Macomb Hospi-
tal Corporation-Detroit Memorial Hos-
pital, Detroit-Macomb Hospital Corpo-
ration-South Macomb Hospital, Ed-
ward W. Sparrow Hospital, Flint Osteo-
pathic Hospital, Holland Community
Hospital, Lansing General Hospital, Os-
teopathic, Lapeer County General Hos-
pital, McLaren General Hospital, Met-
ropolitan Hospital, Midland Hospital
Association, Munson Medical Center,
Muskegon General Hospital, Oakwood
Hospital, Providence Hospital, Reed
City Hospital, St. Francis Hospital, St.
John Hospital, St. Joseph Hospital, Si-
nai Hospital of Detroit, W.A. Foote Me-
morial Hospital, Plaintiffs,

v.

Margaret M. HECKLER, In Her Official
Capacity As Secretary Of Health And
Human Services, and Provider Reim-
bursement Review Board, Defendants.

Civ. A. No. 84CV-7244-AA.

United States District Court,
E.D. Michigan, S.D.

May 22, 1985.

Kenneth R. Marcus, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for plaintiffs.

Karl Overman, Asst. U.S. Atty., Detroit, Mich., Deborah M. Chaskes, Office of the Gen. Counsel, Dept. of Health & Human Services, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

## I. Background

This is the appeal of a group of Michigan hospitals from the denial of their reimbursement claims under the Medicare program. The plaintiff hospitals, providers of Medicare services, challenge the method used by the Department of Health and Human Services to reimburse them for some of those services. The dispute concerns the classification of days spent by women inpatients in the labor/delivery rooms of the hospitals.

The Medicare program, 42 U.S.C. § 1395 et seq. (1982), subsidizes the reasonable costs of medical care for elderly and disabled citizens. Part A of the program provides for federal reimbursement to hospitals and other institutions for services rendered to Medicare beneficiaries. The providers are reimbursed directly by the government, usually through private organizations such as the Blue Cross Association, which act as "fiscal intermediaries."

The reimbursement at issue in this case is based on the hospitals' "reasonable cost" of rendering covered services. Reasonable cost is broadly defined by the Medicare statute, 42 U.S.C. § 1395x(v)(1)(A), and is determined more specifically in accordance with regulations promulgated by the Secretary of the Department of Health and Human Services ("the Secretary"). Although the Secretary is given considerable discretion in establishing these regulations, the Medicare program may not subsidize non-Medicare related costs, and non-Medicare sources may not subsidize Medicare costs. 42 U.S.C. § 1395x(v)(1)(A). Additional guidance on calculating reasonable costs is found in the Provider Reimbursement Manual HIM–15 (the "Manual"), issued by the Secretary to interpret the Medicare reimbursement regulations. The policy challenged by the plaintiff hospitals in the present case is contained in Manual § 2345.

The actual reimbursement amount is determined by apportioning a hospital's total allowable costs between its Medicare and non-Medicare patients. The apportionment process encompasses three types of calculations: one for routine services in general care areas; one for routine services in special care areas such as intensive or coro-

nary care units; and one for ancillary services. Routine services are defined as "the regular room, dietary, and nursing services, minor medical and surgical supplies, and the use of equipment and facilities for which a separate charge is not customarily made." 42 C.F.R. § 405.452(b) (1984). They are distinguished from ancillary services, such as x-ray services, for which an additional charge is generally made. Hospitals receive separate reimbursement payments for routine services and for ancillary services.

This case involves the reimbursement for routine services in general care areas. The routine service reimbursement amount is calculated by multiplying the number of Medicare patient days by the average "per diem" cost for all general routine services. The per diem figure is produced by dividing total allowable routine costs by total "inpatient days" for the given fiscal year. _Id._[1]

Manual § 2345 affects the amount that the hospitals receive from Medicare for routine services. It requires patients in the hospital labor/delivery area at the census-taking hour of midnight to be included in the count of total inpatient days. However, none of the costs associated with the labor/delivery patients are included in the routine cost equation. This is because labor/delivery services are considered ancillary, and reimbursement for ancillary services is separate from that for routine services. The hospitals claim that labor/delivery inpatient days should not be factored into the average routine cost per diem formula without including the costs that these patients generate, as this distorts the per diem reimbursement figure downward.[2] Plaintiffs point out that the downward distortion resulting from Manual § 2345 is exacerbated by the fact that Medicare beneficiaries make very little use of the labor/delivery room facilities. The hospitals conclude that Manual § 2345 causes the government to underreimburse them for their Medicare expenses, and thus results in an illegal subsidization of Medicare by non-Medicare patients.

Medicare providers obtain reimbursement for covered expenses by submitting to the fiscal intermediary a year-end cost report. 42 U.S.C. §§ 1395f, 1395g; 42 C.R.F. § 405.453(f). The intermediary then audits the cost report, and issues a Notice of Program Reimbursement ("NPR"). The NPR constitutes a final determination of the provider's reimburseable expenses. A provider that is dissatisfied with the fiscal intermediary's final determination may appeal to the Provider Reimbursement Review Board ("PRRB"). 42 U.S.C. § 1395oo (a). Section 1395oo (b) authorizes group appeals such as the one here. The PRRB's decision is final, unless the Secretary reverses, affirms, or modifies the Board's decision within sixty days. § 1395oo (f)(1). A provider may then obtain judicial review of any final decision of the PRRB or any subsequent reversal, affirmance, or modification by the Secretary. _Id._

One group of plaintiff hospitals in the present case defied Manual § 2345 by excluding labor/delivery patients from the inpatient routine day count in its cost reports

---

1. This calculation can be illustrated as follows:

$$\frac{\text{total cost of routine services}}{\text{total number of inpatient days}} = \text{average cost per diem (of providing routine services)}$$

(average cost per diem) × (number of Medicare inpatient days) = amount reimbursed to hospitals for providing routine services

2. Using the formula, the problem is as follows:

$$\frac{\text{total routine costs (no labor costs included)}}{\text{total number of inpatient days (labor patients included)}} = \text{average cost per diem (too low)}$$

(the "Exhibit A" hospitals.)[3] The fiscal intermediary, Blue Cross, rejected this, and adjusted each Exhibit A hospital's cost report to include the labor/delivery patients in the inpatient routine day count. The Exhibit A hospitals appealed to the PRRB, which held for the hospitals on January 10, 1984. The Secretary, acting through the Deputy Administrator of the Health Care Financing Administration ("Deputy Administrator" and "HCFA"), elected to review the PRRB decision. The Deputy Administrator reversed the PRRB on March 16, 1984, holding that "[l]abor/delivery room days are to be included in the determination of the providers' average per diem cost of routine inpatient care. Labor/delivery room costs are not to be included in the providers' routine care statistics." HCFA Decision at 7. The Exhibit A hospitals now appeal the decision of the Deputy Administrator to this court.

A second group of plaintiff hospitals complied with Manual § 2345 on its cost reports (the "Exhibit B" hospitals). Some Exhibit B hospitals then submitted amended reports excluding the labor/delivery room days to the intermediary before the intermediary had issued the NPRs (the "Exhibit B-1" hospitals). The intermediary, however, refused to allow the amendments. Other Exhibit B hospitals received their NPRs, and then attempted to alter their cost reports to challenge Manual § 2345 (the "Exhibit B-2" hospitals). The intermediary also refused to allow the Exhibit B-2 hospitals to alter their cost reports. All of the Exhibit B hospitals appealed, but the PRRB concluded that it lacked jurisdiction over these claims. The Exhibit B hospitals now appeal the PRRB's jurisdictional decision to this court.

A number of issues stand before the court for decision. First is the question of jurisdiction over the claims of the Exhibit B hospitals. Next, both sides ask the court

to rule on the merits of the labor/delivery issue.[4] The Secretary moves to remand this case to the PRRB for the presentation of additional evidence, or in the alternative for summary judgment. The hospitals move for summary judgment.

II. *Jurisdiction*

■ The PRRB held that it lacked jurisdiction over the Exhibit B hospitals' claims because these hospitals failed to challenge Manual § 2345 in their cost reports. This court may review PRRB decisions denying jurisdiction over providers' claims, but may not reach the underlying merits of such claims. *See Saline Community Hosp. Ass'n v. Secretary of Health and Human Serv.*, 744 F.2d 517, 520 (6th Cir.1984).

■ Section 1395oo (d) sets forth the jurisdiction of the PRRB over appeals from decisions by the fiscal intermediary:

The Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) even though such matters were not considered by the intermediary in making such final determination.

42 U.S.C. § 1395oo (d). Courts disagree about the scope of jurisdiction that § 1395 oo (d) confers to the PRRB. The Seventh Circuit has held that the statute allows the PRRB to consider matters outside the cost report. *Saint Mary of Nazareth Hosp. Center v. Department of Health and Human Serv.*, 698 F.2d 1337, 1346 (7th Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 107, 78 L.Ed.2d 110 (1983). The Circuit Court for the District of Columbia has taken a narrower view of the PRRB's jurisdiction. In *Athens Community Hosp. v. Schweiker*, 743 F.2d 1 (D.C.Cir.1984) (*"Athens II"*), the court held that § 1395oo (d)

---

**3.** The groups of plaintiff hospitals are called "Exhibit A" and "Exhibit B". This refers to PRRB opinion exhibits that name the hospitals belonging to each group.

**4.** Both sides agree that the court should rule on the merits of the Exhibit A hospitals' claims. The Exhibit B hospitals also ask for a decision on the merits of their claims, which the Secretary opposes. *See* Part II *infra.*

gives the PRRB jurisdiction over items explicitly claimed by the provider in its cost report that were disallowed by the fiscal intermediary, and then contested by the provider before the PRRB. The PRRB also has jurisdiction to revise other aspects of matters claimed by the provider, when its review of properly contested matters requires it to do so. 743 F.2d at 4–10. This court believes that *Athens II* correctly interprets the jurisdictional language of § 1395oo (d).

Having decided that PRRB jurisdiction in this case applies only to claims explicitly made by the hospitals in their cost reports, the question now is whether the Exhibit B hospitals included their challenge to Manual § 2345 in their initial reports. The Exhibit B hospitals argue that they did. They assert in their motion for summary judgment that "[t]he category of general routine inpatient days, which pursuant to *Manual* § 2345 includes labor/delivery days, is present in every cost report. No cost report can be completed without it." The Exhibit B hospitals contend that they "self-disallowed" their claims by including labor/delivery days in the routine inpatient count. They conclude that self-disallowed claims pertaining to calculations in a cost report are covered by that report. Therefore, the PRRB should have asserted jurisdiction over the Exhibit B hospitals' challenges to Manual § 2345.[5]

■ The court disagrees. Once again, the analysis of the Circuit Court for the District of Columbia is persuasive. In *Athens II*, that court held that PRRB jurisdiction under § 1395oo(d) does not extend to items "listed on the cost report at the time of submission but not claimed." The court stated:

We do not think Congress intended to permit a provider to claim dissatisfaction based upon its own failure to request reimbursement of a cost item. If a provider is unhappy with the reimbursement

the intermediary allowed in such a case, it is the fault of the provider and not of the intermediary. It simply is not plausible to contend that Congress has created a scheme where the provider can claim dissatisfaction and have recourse to an appeal procedure because the intermediary failed to read the provider's mind and anticipate all those things the provider would like to be reimbursed for, even though it did not request them.

743 F.2d at 6 (footnote omitted).

Although the Exhibit B hospitals did not include their challenges to Manual § 2345 in their cost reports, all of them tried to amend the reports after submitting them. The Exhibit B Hospitals argue that they successfully added these claims, making them part of the cost reports. From this, they conclude that the PRRB had jurisdiction over their claims under § 1395oo (d). The court will first examine the Exhibit B–1 hospitals.

## A. *Amending Cost Reports*

The Exhibit B–1 hospitals attempted to amend their cost reports before the issuance of their NPRs. Medicare regulations provide that "[a]mended cost reports to revise cost report information which has been previously submitted by a provider may be permitted or required as determined by the Health Care Financing Administration." 42 C.F.R. § 405.453(f). The HCFA accordingly has promulgated Medicare Intermediary Manual, HIM–13–2 § 2631.2A:

A provider may file or an intermediary may require an amended cost report to:

1. correct material errors detected subsequent to the filing of the original cost report,

2. comply with the health insurance policies or regulations,

3. reflect the settlement of a contested liability; ...

---

5. There is authority that supports the position of the Exhibit B hospitals. *See, e.g., Community Hosp. of Roanoke Valley .v. Heckler*, 588 F.Supp. 674, 678 (W.D.Va.1984) (PRRB has jurisdiction over claims of hospitals that had "self-disallowed" the exclusion of labor/delivery days from the routine cost formula).

Providers are permitted to amend their cost reports at any time before the issuance of the NPR.

Section 2631.2A clearly gives the Exhibit B-1 hospitals the right to amend their cost reports to correct "material errors." If these hospitals had the right to amend, then their challenges to Manual § 2345 were part of their cost reports. This would mean that the PRRB should have ruled on the merits of the labor/delivery issue as to the Exhibit B-1 hospitals.

■ PRRB jurisdiction over the substantive claims of the Exhibit B-1 hospitals thus turns on whether or not their initial cost reports contain a material error. The PRRB did not address this issue, instead deferring to the fiscal intermediary's disallowance of the proposed amendments. This was improper. The Medicare statute and regulations do not make the fiscal intermediary the final arbiter of proposed amendments. Moreover, the determination of whether the treatment of an expense in a cost report constitutes a material error in the report is a substantive one. It closely resembles the intermediary's determination of whether the expenses claimed in a cost report are reimbursable, which is subject to PRRB review.

For these reasons, the court remands the claims of the Exhibit B-1 hospitals to the PRRB for a determination of whether the cost reports at issue contain material error. The PRRB will then be able to decide whether the Exhibit B-1 hospitals' reports were properly amended to challenge Manual § 2345. These steps will enable the PRRB to analyze and rule on the issue of its own jurisdiction. If the PRRB finds jurisdiction, it will then consider the merits of the claims made by the Exhibit B-1 hospitals.

## B. Reopening Cost Reports

The Exhibit B-2 hospitals received their NPRs before they tried to alter their cost reports to include a challenge to Manual § 2345. These hospitals therefore are requesting a "reopening" of their cost reports, rather than proposing an amendment to them.[6] The analysis of reopenings differs from that of amendments, as different regulations govern.

The Medicare regulations provide for the reopening of decisions of the fiscal intermediary, the PRRB, and the Secretary "to revise any matter in issue" during the proceedings within three years of the decision. 42 C.F.R. § 405.1885(a). The regulation goes on to state that "[j]urisdiction for reopening a determination or decision rests exclusively with that administrative body that rendered the last determination or decision." § 405.1885(c).

The Circuit Court for the District of Columbia has interpreted the reopening regulations in a case almost identical to the one presented by the Exhibit B-2 hospitals. In *Saint Mary of Nazareth Hosp. Center v. Schweiker,* 741 F.2d 1447 (D.C.Cir.1984) ("*St. Mary II*"), the court ruled on the request of Saint Vincent Hospital to reopen its cost report to add a challenge to Manual § 2345. The fiscal intermediary refused to reopen the report, and the court deemed the intermediary's decision to be final.[7]

**6.** The Medicare Intermediary Manual, HIM–13–2 § 2631, defines "reopening" as follows:

For the purposes of this section, the term "reopening" means an affirmative action taken by an intermediary ... to reexamine or question the correctness of a determination or decision otherwise final....

For example, under the provisions of this paragraph, an amended cost report accepted by an intermediary after its issuance of the initial determination of the amount of program reimbursement would be deemed to constitute a request by the provider to reopen an intermediary's determination.

*See also Borgess Medical Center v. Schweiker,* 563 F.Supp. 370, 372–73 (W.D.Mich.1982) (citing HIM–13–2 § 2631 and distinguishing between reopenings and amendments of cost reports).

**7.** In *St. Mary II,* the fiscal intermediary, Blue Cross, refused to reopen Saint Vincent's .cost report to add a challenge to the labor/delivery room policy of Manual § 2345, but reopened the report on an unrelated issue. The PRRB then exercised jurisdiction over all of Saint Vincent's claims on appeal, including its challenge to Manual § 2345. The PRRB thought that the hospital was entitled to add anything that it wanted to its cost report, once the intermediary

The court cited its prior holding in *Athens II supra*, and 42 C.F.R. § 405.1885(c), and found that "the decision to reopen lies exclusively with the last decision-maker." 741 F.2d at 1449. Given that Blue Cross alone decides whether or not to permit reopening, the court concluded that the PRRB should refuse to exercise jurisdiction over claims presented after issuance of the NPR that Blue Cross had not allowed. *Id. See also Athens II, supra,* at 7–8 (PRRB lacks jurisdiction over intermediary's refusal to reopen cost reports to include requests for reimbursement of certain stock option costs and federal income tax costs); *John Muir Memorial Hosp. v. Califano,* 457 F.Supp. 848, 853 (N.D.Cal.1978) (district court lacks jurisdiction over fiscal intermediary's refusal to reopen cost reports to allow hospital to change its treatment of certain interest payments).

The Exhibit B–2 hospitals argue that fiscal intermediaries should not possess complete discretion over hospitals' requests to reopen. They contend that this unacceptably delegates final decisionmaking authority to private bodies, citing *Chelsea Community Hosp. v. Blue Cross Ass'n,* 630 F.2d 1131 (6th Cir.1980). *Chelsea* is readily distinguishable from the present case, however. It addressed only pre-1973 Medicare reimbursement claims, and found that due process required some form of judicial review. The Sixth Circuit explicitly did not consider the 1974 amendments to the Medicare Act that created the PRRB and allowed for a system of limited judicial review. 630 F.2d at 1133 n. 2.

The argument of the Exhibit B–2 hospitals that fiscal intermediaries cannot constitutionally make final decisions on reopenings is further weakened by *Schweiker v. McClure,* 456 U.S. 188, 102 S.Ct. 1665, 72

L.Ed.2d 1 (1982) and *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). In *Schweiker,* the Supreme Court upheld the constitutionality of hearings on individuals' claims for Medicare Part B benefits. The hearings were held by officers selected by private insurance carriers, and there was no further right of administrative or judicial review. The Court found that the procedure provided due process, as the hearing officers lacked any bias or interest in the proceedings.[8] Similarly, the fiscal intermediary in the present case lacks any financial stake in the outcome of this controversy, suggesting that it is a constitutionally adequate decisionmaker.

In *Califano v. Sanders,* the Supreme Court rejected Sanders' argument that judicial review was available for "alleged abuses of agency discretion in refusing to reopen claims for social security benefits." 430 U.S. at 108, 97 S.Ct. at 985. The Court noted that the opportunity to reopen final decision on benefits is "afforded by the Secretary's regulations and not by the Social Security Act." *Id.* Judicial review was limited by the Act to the original decision denying benefits. The Court found that its duty "is to respect" the Congressional decision to limit judicial review, which was "obviously designed to forestall repetitive or belated litigation of stale eligibility claims." *Id.* This court should follow the Supreme Court in respecting the lack of judicial review over the requests to reopen in the present case.

■ The reopening procedures of the Medicare regulations reflect the judgment that the providers' ability to add claims to cost reports must end at some point. The issuance of the NPR was selected as that point. Accordingly, the regulations give

had reopened the report. The Deputy Administrator then reversed the PRRB, finding that it lacked jurisdiction over Saint Vincent's challenge to § 2345. The case then went to the federal district court, which did not discuss the jurisdiction issue, and finally to the court of appeals. The court of appeals affirmed the Deputy Administrator, finding that the PRRB lacked jurisdiction over Blue Cross' denial of the hospital's request to reopen. 741 F.2d at 1449. The

fact that Blue Cross has allowed reopening on a separate issue was deemed irrelevant, as "reopening is issue-specific." *Id.*

8. The Court reasoned that the carriers who selected the officers were disinterested, as all claims were paid from government rather than from carrier funds. In addition, the Government paid the salaries of the hearing officers themselves. 102 S.Ct. at 1670–71.

the fiscal intermediary complete discretion over requests to alter cost reports that are made after the issuance of the NPR. The adverse decision of Blue Cross on the requests to reopen is therefore final. The PRRB correctly refused to exercise jurisdiction over the claims of the Exhibit B–2 hospitals, as it has none. The court concludes that the Secretary's motion for summary judgment as to the Exhibit B–2 hospitals must be granted.

### III. *Manual § 2345*

The Exhibit A hospitals challenged the validity of Manual § 2345 in their initial cost reports, and now bring their claim before this court. These hospitals primarily rely on Judge McGowan's thoughtful and detailed analysis of the very policy at issue in this case in *Saint Mary of Nazareth Hosp. Center v. Schweiker*, 718 F.2d 459 (D.C.Cir.1983) (*"St. Mary"*). The *St. Mary* opinion has been adopted by the vast majority of courts that have considered this issue, including the Circuit Courts for the First, Fifth, and Ninth Circuits.[9]

In *St. Mary*, Judge McGowan first discussed the standard of review he would apply to Manual § 2345. He found that the policy deserved little deference from the court, as the Secretary's position had fluctuated in the past, and the policy did not result from any substantial expertise. 718 F.2d at 463–66. Judge McGowan then found that the hospitals had fulfilled their admittedly heavy burden of showing that the Secretary had misinterpreted her own regulations. He carefully examined six possible bases for the Secretary's position, and rejected each of them in turn. *Id.* at 466–73. Judge McGowan concluded that "[i]t is irrational to apportion to labor/maternity patients costs which they have not incurred without either including the costs that they have incurred or demonstrating that the distortion is balanced by some other aspect of the accounting process." *Id.* at 473. The court found the result of

this distortion to be the illegal subsidization of Medicare costs by non-Medicare patients. *Id.* at 473–74.

*St. Mary* did not directly rule in favor of the hospitals, however. The court wanted first to be sure that the distortion caused by Manual § 2345 existed. Judge McGowan therefore remanded the case "for the limited purpose of the PRRB's taking evidence on the question whether the number of Medicare patients found nationally in other ancillary areas at the census hour is sufficient to offset the dilution of Medicare reimbursement created by counting labor/maternity patients in the routine inpatient count." *Id.* at 474. He concluded:

> If there is no such offset or if the Secretary decides not to contest the issue, then the Secretary may not count labor/delivery patients, who have not previously that day received routine care, among the routine inpatient population for purposes of calculating the average cost per diem for routine services.

*Id.* On remand, the district court entered judgment for the hospitals. *St. Mary*, 587 F.Supp. 937 (D.D.C.1984). Judge Richey found that the Secretary "has repeatedly acknowledged that the agency cannot make the showing contemplated by the Court of Appeals." 587 F.Supp. at 938. The district court concluded that a remand to the agency would be inappropriate, as no further administrative proceedings were warranted by the decision of the court of appeals.

■ The court adopts the reasoning of *St. Mary*, believes that it is sound, and holds that the existing record supports the hospitals' argument that Manual § 2345 is irrational. Therefore, the Secretary's motion for summary judgment on the basis of the record in this case is denied.

The Secretary further argues that even if the existing record supports the hospitals, this court should remand the case to the PRRB for the presentation of additional evidence. She asserts that Manual § 2345's inclusion of labor/delivery pa-

---

**9.** *See Beth Israel Hosp. v. Heckler* 734 F.2d 90 (1st Cir.1984); *Baylor Univ. Medical Center v. Heckler* 730 F.2d 391 (5th Cir.1984); *Interna-* *tional Philanthropic Hosp. Found. v. Heckler,* 724 F.2d 1368 (9th Cir.1984).

tients in the count of routine days does not dilute Medicare reimbursement, because labor/delivery patients use more routine care after they leave the delivery area. The Secretary contends that the high routine costs generated by labor/delivery patients after giving birth more than compensate for the policy of Manual § 2345.

The Secretary fails to explain, however, why she did not present this evidence to the PRRB. The administrative proceedings in this case occurred after the *St. Mary* decision was released. Moreover, the decisions of both the PRRB and the Deputy Administrator cite *St. Mary*. The Secretary therefore was on notice, at the time of the PRRB hearing, of the need to present additional evidence to bolster her position.[10] She chose not to do so, and now must live with that decision. Accordingly, the Secretary's motion to remand is denied.[11]

The foregoing discussion makes it clear that the Exhibit A hospitals are entitled to summary judgment on their challenge to Manual § 2345. The decision of the Deputy Administrator is therefore reversed, as labor/delivery room days should not be included in the determination of the Exhibit A hospitals' average per diem cost of routine inpatient care. It is further ordered that a copy of this Memorandum Opinion and Order shall be sent by the Secretary to the fiscal intermediary responsible for each of the Exhibit A hospitals, with directions to compute the amount owing to each hospital within forty-five (45) days of the date of this Memorandum Opinion and Order. These amounts shall include interest computed to the date of actual payment, pursuant to 42 U.S.C. § 1395oo (f). Payment of these amounts shall be made within sixty (60) days of the date of this Memorandum Opinion and Order.

SO ORDERED.

---

**10.** Moreover, the evidence that the Secretary proposes to submit is based on 1981 hospital data, and was therefore available to her at the time of the administrative proceedings in this case.

**11.** The Secretary also argues that a remand is "required" by *The University of Tennessee v. United States Dept. of Health and Human Serv.*, 737 F.2d 579 (6th Cir.1984). In *University of Tennessee,* the district court had upheld the Secretary on the labor/delivery issue that is now before this court. After the district court issued its decision, Judge McGowan released his opinion in *St. Mary,* which cast doubt on the validity of the decision of the district court. *University of Tennessee* was then appealed to the Sixth

Circuit. During oral argument, the two sides agreed that the case should be remanded to the Secretary for further consideration in light of *St. Mary.* The Sixth Circuit agreed, and remanded the case.

*University of Tennessee* does not govern the case before this court. The plaintiff hospitals correctly characterize the action taken by the Sixth Circuit as "an order entered upon stipulation of the plaintiffs and defendants." Moreover, it makes no sense for this court to remand the case to the Secretary for further consideration in light of *St. Mary.* The Secretary, acting through the Deputy Administrator, already has explicitly considered and rejected *St. Mary* in the administrative phase of this case.