**UNIVERSITY OF CINCINNATI, d/b/a University Hospital, Plaintiff-Appellee,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellant.**

**No. 85–3651.**

United States Court of Appeals, Sixth Circuit.

Argued April 25, 1986.

Decided Jan. 15, 1987.

**308**

Donetta D. Wiethe, Asst. U.S. Atty., Cincinnati, Ohio, Susanne M. Lee (argued) Office of the General Counsel, U.S. Dept. of Health & Human Service, Washington, D.C., for defendant-appellant.

Peter L. Cassady (argued), Cincinnati, Ohio, for plaintiff-appellee.

Before MERRITT and JONES, Circuit Judges, and THOMAS,* Senior District Judge.

---

* The Honorable William K. Thomas, Senior District Judge of the United States District Court for the Northern District of Ohio, sitting by designation.

1. Asked questions at oral argument about the Hospital's cost reports in the respects claimed, counsel for the Secretary responded:

WILLIAM K. THOMAS, Senior District Judge.

The Board of Trustees of the University of Cincinnati operates University Hospital (Hospital). Hospital is a provider of services under the Medicare Act, 42 U.S.C. §§ 1395 *et seq.* The controversy between the Hospital and the Secretary involves the Provider Reimbursement Review Board's (Board or PRRB) denial of jurisdiction to hear an appeal of the Hospital relating to three annual cost reports filed by the Hospital with its fiscal intermediary, Blue Cross Association-Blue Cross of Southwest Ohio.

Pursuant to 42 U.S.C. § 1395*oo* (f), Hospital brought a civil action to obtain judicial review of the Board's denial of jurisdiction. The United States District Court for the Southern District of Ohio granted summary judgment for the University of Cincinnati, plaintiff-appellee. The district court declared that "the Provider Reimbursement Review Board has jurisdictional authority for the 1979, 1980 and 1981 cost years concerning the self-disallowed costs of the interns' and the residents' education and related overhead in connection with the Family Practice Clinic and Central Psychiatric Clinic issues." The Secretary appeals the district court's final judgment for the plaintiff.

On or about October 30, 1979, October 30, 1980, and October 30, 1981 the Hospital, as a provider of hospital services, filed its cost reports as required by the Medicare Act and regulations thereunder, "reporting that it had incurred certain expenses reimbursable under the Medicare Act" during the fiscal years ending mid–1979, mid–1980, and mid–1981. The Hospital reported in each of the cost reports the expenses, described by the district court, for which no Medicare reimbursement was sought, because the Hospital "mistakenly believed them to be non-reimbursable."[1]

> We have conceded as to their statements that they somehow claimed this cost, they have never come forward and shown us how they claimed it.
>
> .    .    .    .    .
>
> I'm going on the Hospital's assertion. We're not denying that hospitals list all of their

The Secretary's fiscal intermediary thereafter engaged in audits and carried on negotiations with the Hospital. On September 30, 1982 the Intermediary issued a Notice of Program Reimbursement (NPR) for each of the cost years in question.

■ The Hospital, on March 25, 1983, filed a request for hearing before the Provider Reimbursement Review Board for the fiscal years here in question. 42 U.S.C. § 1395oo (a), hereafter discussed, makes provision for establishment of the Provider Reimbursement Review Board and authorizes a provider of services "which has filed a required cost report within the time specified in regulations" to obtain a hearing "with respect to such cost report" by the Board. As the text set forth in the margin discloses,[2] section 1395oo (a) provides for appeals to the Board only by providers. The section does not grant a fiscal intermediary the right to appeal to the Board. Nor would it make any sense to allow such an appeal. After all, it is the final determina-

tion of the intermediary which has passed on the provider's cost report that is the subject of an appeal to the Board. The Board may only consider such a determination when a provider has properly brought an appeal from such determination.

## I.

### A.

Before analyzing the question of the Board's jurisdiction over providers' appeals, the court needs to note the standard of review applied by the trial court in its consideration of the case below. That same standard of review must likewise control this court's analysis of the jurisdictional question.

42 U.S.C. § 1395oo (f) specifies that a civil action for judicial review of a final decision of the Board "shall be tried pursuant to the applicable provisions under Chapter 7 of title 5 [the Administrative

---

costs, and we certainly do not dispute his assertion that it somehow—he has listed those on the cost report and that he subtracted them, making what he terms a self-disallowance.

Though the record is devoid of documentation the parties thus agree that in its cost reports the Hospital made no claim for reimbursement of the described expenses. However, it is agreed that the Hospital listed, but "self-disallowed," these costs. The Hospital says this was because it "mistakenly believed them to be non-reimbursable."

**2.** In pertinent part, 42 U.S.C. § 1395oo (a) provides:

Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by the Provider Reimbursement Review Board (hereinafter referred to as the "Board") which shall be established by the Secretary in accordance with subsection (h) of this section and (except as provided in subsection (g)(2) of this section) any hospital which receives payments in amounts computed under subsection (b) of (d) of section 1395ww of this title and which has submitted such reports within such time as the Secretary may require in order to make payment under such section may obtain a hearing with respect to such payment by the Board, if—

(1) such provider—

(A)(1) is dissatisfied with a final determination of the organization serving as its fiscal intermediary pursuant to section 1395h of this title as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such report

. . . . .

(2) the amount in controversey is $10,000 or more, and

(3) such provider files a request for hearing within 180 days after notice of the intermediary's final determination under paragraph (1)(A)(i) . . .

Also pertinent is section 1395oo (d), discussed *infra* part I.C., which provides:

**Decisions of Board**

A decision by the Board shall be based upon the record made at such hearing, which shall include the evidence considered by the intermediary and such other evidence as may be obtained or received by the Board, and shall be supported by substantial evidence when the record is viewed as a whole. The Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) even though such matters were not considered by the intermediary in making such final determination.

Procedure Act], notwithstanding any other provisions in section 405 of this title." Under the Administrative Procedure Act's standard of review, the decision of the Secretary or Board may be set aside only if it is " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A) (1976)." *Richey Manor, Inc. v. Schweiker,* 684 F.2d 130, 133–34 (D.C.Cir.1982); *Home Health Services v. Schweiker,* 683 F.2d 353, 356 (11th Cir.1982).

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837, 842–843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), considering the principles a court must follow in reviewing "an agency's construction of the statute which it administers," declares that if "the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency must give effect to the unambiguously expressed intent of Congress." However, if the court determines that the "statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."

Further, in *Securities Industry Association v. Board of Governors,* 468 U.S. 137, 142–43, 104 S.Ct. 2979, 2983, 82 L.Ed.2d 107 (1984), the Court has made clear that "deference is not to be a device that emasculates the significance of judicial review." Rather, judicial deference to an agency's interpretation of a statute "only sets 'the framework for judicial analysis; it does not displace it.' " *Id.* at 143, 104 S.Ct. at 2983. (quoting *United States v. Vogel Fertilizer Co.,* 455 U.S. 16, 24, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982), quoting *United States v. Cartwright,* 411 U.S. 546, 550, 93 S.Ct. 1713, 1716, 36 L.Ed.2d 528 (1973)). A reviewing court "must reject administrative constructions of [a] statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement." *Securities Industry Association,* 468 U.S. at 143,

104 S.Ct. at 2983 (quoting *Federal Election Commission v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981)).

**B.**

Mindful of these principles of judicial review, we must decide whether the Provider Reimbursement Review Board's jurisdictional interpretation of section 1395oo is "based on a permissible construction of the statute," or, on the other hand, is "inconsistent with the statutory mandate" or "frustrate[s] the policy that Congress sought to implement."

In its decision, the Provider Reimbursement Review Board found as follows:

[T]here is no jurisdictional authority for the 1979, 1980 and 1981 cost years concerning the self-disallowed costs of the interns' and residents' education and related overhead in connection with the Family Practice Clinic and Central Psychiatric Clinic issues because the Provider failed to set forth any claim for the disputed cost in any of the filed cost reports or make any overt disclosure of a disagreement for this issue.

In a supplemental explanation for denial of jurisdiction the Board, in part, stated:

The jurisdictional requirements to secure a Board hearing are set forth in 42 U.S.C. section 1395oo(a) and (b).[3]

Although the Board refers to "jurisdictional requirements," section 1395oo (a), set forth *supra* note 2, does not expressly use the word "jurisdiction." Omission of the word jurisdiction permits a search for intended jurisdictional requirements in the legislative history of section 1395oo.

The original House Bill, with few Senate amendments, became law on October 30, 1972. The House Bill, as approved by the Senate, provided for the establishment of a Provider Reimbursement Review Board. The report of the House Ways and Means Committee thus described the new procedure:

is not here applicable.

---

**3.** Section 1395oo (b), relating to group appeals,

Any provider of services which has filed a timely cost report may appeal an adverse final decision of the fiscal intermediary with respect to the period covered by such a report to the Board where the amount in controversy is $10,000 or more.

H.R. Rep. No 231, 92d Cong., 2d Sess., *reprinted in* 1972 U.S. Code Cong. & Admin. News 4989, 5094. The House Report further stated its belief that "it is desirable to prescribe in law a specific procedure for *settling disputed final determinations* applying to the amount of program reimbursement" (emphasis added). *Id.* The Conference Report indicates that "the Senate amendment modified the House Bill by introducing two additional situations which could serve as "a basis for provider appeals" from final decisions of the fiscal intermediary. H.R. Conf.Rep. No 1605, 92d Cong., 2d Sess., *reprinted in* 1972 U.S. Code Cong. & Admin.News 5370, 5388. In speaking of "a basis for provider appeals," the Conference Report [4] makes clear that the new procedure was to be an appellate process and that to obtain an appeal the provider must satisfy the statutory basis for the appeal.

The statute itself, in section 1395oo (a), declares that the provider must file "a required cost report," and submit "such reports ... as the Secretary may require." Thus, the statute makes the submission of a "required cost report" a condition prece-

dent for a provider to obtain a Board hearing.

In writing this mandate into the Medicare Act, Congress was aware that the Secretary had adopted various regulations governing a provider's submission of cost reports. Nothing in the statute suggests that Congress intended to disturb such regulations. Rather, Congress mortised together the new statutory language and the existing regulations.[5]

42 C.F.R. § 405.406(b),[6] adopted by the Secretary in 1966,[7] required providers of services to file cost reports "on an annual basis with reporting periods based on the provider's accounting year." Another of the Secretary's cost reporting requirements, adopted on October 13, 1972, added a new subsection (f) to 42 C.F.R. § 405.-453.[8] This subsection states in its introductory paragraph:

(f) *Cost reports.* For cost reporting purposes, the health insurance program requires each provider of services to submit periodic reports of its operations which generally cover a consecutive 12-month period of the provider's operations. Amended cost reports to revise cost report information which has been previously submitted by a provider may be permitted or required as determined by the Social Security Administration.[9]

The Secretary's regulations also detailed the required content of the provider's cost

4. The Conference Report noted that under present law "[t]here is no specific legislative provision for an appeal by the provider of the intermediary's final reasonable cost determinations." The House Bill "provided for the establishment of a Provider Reimbursement Review Board which would review cases involving medicare providers of services." H.R. Conf. Rep. No. 1605, 92d Cong., 2d Sess., *reprinted in* 1972 U.S. Code Cong. & Admin. News 5370, 5387-88.

5. As observed in *Chevron,* when Congress has "explicitly left a gap for the agency to fill" the Secretary has "an express delegation of authority ... to elucidate a specific provision of the statute by regulation." *Chevron,* 467 U.S. at 843-44, 104 S.Ct. at 2782.

6. Section 405.406(b) further declares that "[i]n the interpretation and application of the princi-

ples of reimbursement, the fiscal intermediaries will be an important source of consultative assistance to providers." Thus, the Secretary lays down the policy of directing consultation between the provider and the intermediary in interpreting and applying "the principles of reimbursement." Such consultation about "reimbursement" matters would likely embrace notification by a provider to its intermediary of any request for reimbursement.

7. Published in 31 Fed.Reg. 14810 (1966).

8. 37 Fed.Reg. 21630 (1972).

9. Sec. 405.453(f) provides in paragraph 2:
*Due dates for cost reports.* (i) Cost reports are due on or before the last day of the third month following the close of the period covered by the report....

report. Since 1966 the Secretary had specified in 42 C.F.R. § 405.454(f) [10] that while interim payments could be made to a provider, "[a]ctual costs reimbursable to a provider cannot be determined until the cost reports are filed and costs are verified." Reasonably read, this regulation informed Congress and continues to inform providers that to secure reimbursement for its "actual costs" a provider must list in the cost report each cost for which reimbursement is requested and must furnish sufficient information in the cost report to enable the fiscal intermediary to verify each reimbursement request.

■ With knowledge of the cost report filing requirements in the Secretary's regulations, Congress in section 1395oo (a)(1)(A)(i) specified a further condition which a provider of services must meet. A provider may only obtain a Board hearing "if" it is *dissatisfied* with a final determination of the organization serving as its fiscal intermediary ... as to the amount of total program reimbursement due the provider ..." (emphasis added).[11] Reasonably read, this provision requires as a condition precedent for a provider obtaining a Board hearing that the provider show that it is "dissatisfied with a final determination" of the intermediary. To show dissatisfaction a provider must evidence dissatisfaction with respect to one or more items of that final determination for which the provider believes that it incorrectly received only partial reimbursement or no reimbursement at all. It follows that there must be a recorded predicate in the provider's cost report for any such dissatisfaction. It is therefore concluded that the foregoing provision of section 1395oo (a) requires that, to show dissatisfaction, the provider must have first made a claim in its cost report for reimbursement as to the item for which it was denied reimbursement in whole or in part.

The foregoing analysis of Section 1395oo (a) and the Secretary's relevant regulations support the Board's statement [12] that the requirements to secure a Board hearing set forth in Section 1395oo (a) are "jurisdictional." Moreover, this construction of section 1395oo (a) is not "inconsistent with the statutory mandate."

### C.

In *Saline Community Hospital Association v. Secretary*, 744 F.2d 517, 519 (6th Cir.1984), this court noted that "[t]he re-

---

10. This section states:
   *Retroactive adjustment.* (1) Title XVIII of the Act provides that providers of services shall be paid amounts determined to be due, but not less often than monthly, with necessary adjustments due to previously made overpayments or underpayments. Interim payments are made on the basis of estimated costs. Actual costs reimbursable to a provider cannot be determined until the cost reports are filed and costs are verified. Therefore, a retroactive adjustment will be made at the end of the reporting period to bring the interim payments made to the provider during the period into agreement with the reimbursable amount payable to the provider for the services rendered to program beneficiaries during that period.

11. Inapplicable are sections 1395oo(a)(1)(A)(ii) ("dissatisf[action] with a final determination of Secretary"); (1)(B) (failure of a provider to receive a final determination from an intermediary "on a timely basis after filing such report"), and (1)(C) (failure of a provider to receive a final determination on a timely basis after filing a supplementary cost report).

12. The Board's "supplemental explanation for denial of jurisdiction" thus speaks to the Secretary's regulations:
   The regulations provide that, as a condition precedent, the provider must have claimed the cost in its filed cost report to give rise to any controversy. The Provider may also preserve appeal rights by filing a clear overt disclosure of its disagreement for a particular disputed item(s) which may relate to such matters as certain self-disallowed or unclaimed costs. When the provider files a cost report, it must either claim the particular cost or state its claim and disclose its position on an issue so the intermediary can consider and make a final determination. The intermediary's final determination is a statutory prerequisite for Board (or judicial) jurisdiction. The Board's jurisdiction flows from the intermediary's NPR with respect to the filed cost report and the disputes arising from costs claimed and/or any clear disclosure of a particular disputed item with the filed cost report.

quirements for administrative review by the Board are contained in 42 U.S.C. § 1395oo(a)." In upholding the Provider Reimbursement Review Board's "determination that it lacked jurisdiction," this court ruled:

> The claims at issue were *not* initially included in the cost reports, and they were not properly tendered as "amendments" to the cost reports.

*Id.* at 520 (emphasis in original).

The determination in *Saline* that section 1395oo (a) sets forth jurisdictional requirements for Board review of an intermediary's decision is consistent with the conclusion reached above in the instant case. However, since other courts have determined that section 1395oo (d), rather than section 1395oo (a), controls the jurisdiction of the Provider Reimbursement Review Board, it is essential now to analyze this related section entitled "Decisions of Board."

The first sentence in Section 1395oo (d) [13] provides that the decision shall be "based upon the record made at such hearing, which shall include evidence considered by the intermediary and such other evidence as may be obtained or received by the Board." This language explicitly allows the Board to augment the appellate evidentiary record, giving a *de novo* attribute to the hearing.[14] Thus, this sentence indicates that a provider is entitled to a hearing in which it can retry issues raised before the fiscal intermediary. But the sentence does not state or imply that the provider can obtain a new trial of an issue not raised before the fiscal intermediary.

The second and final sentence of the section defines the Board's powers in rendering its decisions.[15] The term "power," in this context, is understood to be used interchangably with the term "jurisdiction." The elusive term "jurisdiction" has been defined as follows:

> In the general sense [jurisdiction] signifies the abstract right of a tribunal to exercise its powers in causes of a certain class, and in the particular sense it relates to the right of a tribunal to exercise its power with respect to a particular matter.[16]

Hence, the final sentence of section 1395 oo (d) may be read as providing the Board two separate sources of power or jurisdiction. First, "with respect to a [provider's] cost report" the Board is granted the "power to affirm, modify, or reverse a final determination of the fiscal intermediary." This grants a range of authority that is traditionally available to an appellate tribunal. As a second grant of power or jurisdiction the Board may "make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) even though such matters were not considered by the intermediary in making such final determination." Thus the Board is given power to make a revision on a matter "covered by such cost report" that is either "adverse to the provider of services," or, impliedly, that is beneficial to the provider. Plainly, the Board is given authority not included in the first grant of power. The extent of this supplemental power or jurisdiction to "make any other revisions" needs further analysis.

As observed earlier, the fiscal intermediary *cannot appeal its final determination to the Provider Review Reimburse-

---

13. Section 1395oo (c), not here applicable, guarantees a provider's right to counsel at the hearing, "to introduce evidence, and to examine and cross-examine witnesses." Evidence may be received even though inadmissible under "rules of evidence applicable to court procedure."

14. The first sentence concludes with a requirement that the decision of the Board "shall be supported by substantial evidence when the record is viewed as a whole."

15. The Board "shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) even though such matters were not considered by the intermediary in making such final determination."

16. 20 Am.Jur.2d *Courts* § 87 (1965).

ment Board. Nor does the statute authorize the Board *sua sponte* to certify for review a final determination of an intermediary. Hence, the Board may exercise its power to revise a final determination, granted by the final sentence of § 1395oo (d), only when a provider properly appeals to the Board from a final determination of an intermediary.

As seen, it has been determined, *supra* part I.B., that section 1395oo (a) requires a provider to make a claim to the fiscal intermediary for reimbursement with respect to a matter covered by the provider's cost report as a condition precedent for appealing to the Board the intermediary's final determination. Should the provider fail to make a claim for reimbursement to the fiscal intermediary the provider could not prosecute an appeal to the Board from the fiscal intermediary's final determination denying reimbursement of that claim.

Despite the provider's failure to make a claim for reimbursement, the question remains whether the Board nonetheless has jurisdiction to review the intermediary's final determination by virtue of the ending clause of section 1395oo (d)—"even though such matters were not considered by the intermediary in making such final determination." Preliminarily, it is noted that the word "considered" in this clause also appears in the first sentence of section 1395 oo (d), which states that the record of the Board hearing includes "the evidence considered by the intermediary."

■ Using the primary definition of the transitive verb "to consider," we will construe the verb "considered" as used in section 1395oo (d) to mean "attentively inspected or examined."[17] Under this construction of "considered," an intermediary could not attentively inspect or examine a

"matter covered in the cost report" for which the provider made no claim for reimbursement. Therefore, it is concluded that the ending clause of section 1395oo (d) could not and does not give the Board the power or jurisdiction *de novo* to take up such claim of the provider that was not claimed for reimbursement. However, under the ending clause the Board would have the power or jurisdiction to revise an intermediary's final determination, adversely or beneficially to the provider, as to a matter "covered by [the provider's] cost report" and claimed to be reimbursable, which claim the intermediary had an opportunity to attentively inspect or examine, but did not.[18]

Applying the foregoing interpretations of sections 1395oo (a) and (d) and the Secretary's relevant regulations, this court concludes that the Board properly denied the Hospital's appeal. The failure of the Hospital to expressly and timely claim reimbursement for "the costs of interns' and residents' education and all related overhead in connection with the Hospital's Family Practice Clinic and Central Psychiatric Clinic" denied jurisdiction to the Board to hear the Hospital's appeal. The Hospital's self-disallowance of these costs, without making claim for reimbursement of these costs, deprived the intermediary of an opportunity to "consider" the items even though the items were "matters covered by [the provider's] cost report."

## II.

### A.

The court now tests its interpretations of sections 1395oo (a) and 1395oo (d) by examining the most pertinent federal court decisions.[19] In *Athens Community Hospital*,

---

17. Webster's New International Dictionary 568 (2d ed. 1942) defines "consider" in its primary definition as "[t]o look attentively; to inspect; examine."

18. In *Saline, supra,* 744 F.2d at 519, this court similarly construed § 1395oo (d) to require a provider to "include disputed issues within the initial cost report and preserves the right of review if the intermediary *ignores the claim,* or

instructs the provider to delete the claim" (emphasis added).

19. After completing the text of this opinion, its author received and later read *Baptist Hospital East v. Secretary,* 802 F.2d 860 (6th Cir.1986). Affirming the district court, Judge Engel, (a member of the per curiam panel in *Saline, supra* ) stated: "We do not believe that a mere self-disallowance even when made solely to con-

*Inc. v. Schweiker,* 743 F.2d 1 (D.C.Cir.1984) (*Athens* II), the D.C. Circuit reheard and reaffirmed it's prior decision in *Athens* I, 686 Fed.2d 989 (D.C.Cir.1982). While modifying its reasoning in certain respects, the court affirmed it's "previous determination that [Hospital Corporation of America] may not recover the income tax and stock option cost that it failed to claim." 743 F.2d at 10. With respect to the income tax cost, the court said "[a]t best, HCA's claim ... can be characterized as a 'self-disallowance'" and "its claim with respect to the stock option cost is clearly not even that, for HCA contends only that it was 'directly related' to a category of cost and issue." The court then held:

> As such, the PRRB was correct in holding that it did not have jurisdiction to consider these costs because the intermediary was never given the opportunity to make a final determination about them. Any dissatisfaction on the part of HCA must be with its own failure to claim these costs in a timely fashion.

*Id.*

In an earlier part of the opinion, the *Athens* II court declared:

> The PRRB's jurisdiction, as defined by section 1395oo(d), must be read in light of the Board's functions as set out by section 1395oo(a).

*Id.* at 6. Continuing, the court explained:

> That section states that a provider "may obtain a hearing with respect to [a required] cost report" if a provider "is dissatisfied with a final determination of the ... fiscal intermediary."

*Id.* Referring to section 1395oo (a), the court then observed:

> The subject of the hearing is plainly the cost report and the cost report is the subject of the "final determination." It would be anomalous, moreover, to say that a provider can appeal only when "dissatisfied" while allowing the provider to obtain review of an intermediary's refusal to reimburse the provider for a cost it did not even claim. We do not think Congress intended to permit a provider to claim dissatisfaction based upon its own failure to request reimbursement of a cost item.[20]

*Id.* The *Athens* II court thus makes it evident that filing a claim with the fiscal intermediary is essential to a provider obtaining a Board hearing on such claim. This portion of the *Athens* II court's reasoning conforms to the conclusion reached herein in part I.B. *supra.*

In concluding that a provider must make a claim for reimbursement before obtaining review by the Board, the D.C. Circuit declined to adopt the Seventh Circuit's reading of section 1395oo (d) in *St. Mary of Nazareth Hospital Center v. Department of Health and Human Services,* 698 F.2d 1337 (7th Cir.), *cert. denied,* 464 U.S. 830, 104 S.Ct. 107, 78 L.Ed.2d 110 (1983). After quoting 42 U.S.C. § 1395oo (d), the Seventh Circuit held:

> This section vests broad authority in the Provider Reimbursement Review Board to review the finding of the fiscal intermediary and make any adjustment to the

---

form to regulations with which a provider disagrees raises a claim within the meaning of *Saline* sufficient to preserve the issue for review by the Provider Reimbursement Review Board." 802 F.2d at 864. As seen above, this court similarly determined that a provider's self-disallowance of costs does not constitute a claim. In this respect, and in requiring a claim for reimbursement of costs to be made to the fiscal intermediary to preserve the issue for appeal to the Provider Reimbursement Review Board, this court's opinion is consistent with *Baptist Hospital East.* Moreover, as the concurring opinions point out, *Baptist Hospital* (i.e. part II) decides the same issue presented on this appeal and "[w]e are controlled by that decision."

**20.** Continuing, the court stated:

> If a provider is unhappy with the reimbursement the intermediary allowed in such a case, it is the fault of the provider and not of the intermediary. It simply is not plausible to contend that Congress has created a scheme where the provider can claim dissatisfaction and have recourse to an appeal procedure because the intermediary failed to read the provider's mind and anticipate all those things the provider would like to be reimbursed for, even though it did not request them.

743 F.2d at 6.

cost reports the Board deems necessary. As the statute itself expressly states, the Board may consider any matter "even though such matters were not considered by the intermediary in making such final determination."

*Id.* at 1346. The court then declared:

Therefore, since the statute allows the Board to consider matters outside of the cost reports, we hold the Provider Reimbursement Review Board had the authority to consider whether the costs of providing Medicare patients with bedside telephones are reimbursable expenses under the Medicare Act.[21]

*Id.*

In *Athens* II, the D.C. Circuit rejected the Seventh Circuit's reading of the statute, explaining that such reading ignores and would make meaningless that part of the statute expressly limiting the PRRB's power to 'affirm, modify, or reverse a final determination of a fiscal intermediary ... and to make ... revisions' to *'matters covered by [a] cost report.'* " 743 F.2d at 6 (emphasis in original). This court agrees with this reason for rejecting the Seventh Circuit's analysis. In addition, we believe the Seventh Circuit analysis is flawed due to its failure to read section 1395oo (d) in light of section 1395oo (a)'s jurisdictional requirements, as previously examined.[22]

Thus, this court finds the district court's reliance on *St. Mary of Nazareth Hospital Center,* rather than *Athens Community Hospital,* misplaced, and we must reject the district court's determination that *St. Mary of Nazareth Hospital Center* "announces the correct interpretation of the jurisdictional bounds contained in 42 U.S.C. § 1395oo(d)."

**B.**

In part III. of its opinion, the D.C. Circuit declared in *Athens* II that the "primary obstacle" in interpreting the statute is "how can 'matters' have been 'covered by [a] cost report' but not have been 'considered by the intermediary'?" 743 F.2d at 9. In the ensuing two sentences the D.C. Circuit does not retreat from its earlier conclusion and its final judgment that the provider must expressly request or claim a cost to the intermediary to make it reimbursable:

Because the cost report by its very nature tells the intermediary which costs are claimed, implicit in an intermediary's every determination of a final reimbursement figure is consideration of everything the provider requested. The amount requested is either awarded or it is not, but a decision is made as to all that is expressly claimed.

*Id.* Concluding "that there is only one way of reading the statute that does give effect to both clauses of section 1395oo(d)," the D.C. Circuit then states:

That is to interpret the statute as allowing the PRRB to revise aspects of the reimbursement calculation not actually contested by the provider, and possibly not considered by the intermediary (because not claimed for reimbursement by the provider), when such revision is necessary to accommodate other PRRB revisions of matters that were claimed by the provider, decided adversely by the intermediary, and then contested by the provider to the PRRB. The provider, however, is allowed to appeal only such ad-

---

21. *In Community Hosp. of Roanoke Valley v. Health and Human Serv.,* 770 F.2d 1257, 1262 (4th Cir.1985), the Fourth Circuit rejected the reasoning of the Seventh Circuit and approved the reasoning of the D.C. Circuit. The court quoted language of *Athens* II that the Board's jurisdiction as defined by section 1395oo (d), must be read in light of the Board's functions as set out by section 1395oo (a). But finally the court agreed with the D.C. Circuit "that the scope of jurisdiction conferred by section 1395 oo (d) is limited to matters 'put into dispute by the provider at the time the cost report is filed.' "

22. In *United States v. Withrow,* 593 F.2d 802, 804 (7th Cir.1979), the Seventh Circuit recognized, under 42 U.S.C. § 1395oo, that:

If the provider is *dissatisfied* with the determination of the intermediary ... the provider may obtain a hearing before a Provider Reimbursement Review Board....

(Emphasis added.)

verse decisions of the intermediary. Because this is the only plausible reading of this section that does not have the effect of rendering one part or the other meaningless, we believe that it is proper for us to adopt it.

*Id.*

With deference to the D.C. Circuit's conclusion that there is "only one way of reading the statute that does give effect to both clauses of section 1395*oo* (d)," this court has reached a different conclusion. This court has construed the ending clause of that section to empower the Board to revise an intermediary's final determination, adversely or beneficially to the provider, as to a matter covered by the cost report and claimed to be reimbursable, which claim the intermediary had an opportunity to attentively inspect or examine, but did not.

## C.

The Hospital heavily relies on *Bethesda Hospital v. Heckler*, 609 F.Supp. 1360 (S.D. Ohio 1985). In that case, Judge Spiegel granted summary judgment in favor of Bethesda and Deaconess Hospitals against the Secretary. As pertinent here, the district court ruled in the first part of its opinion that the Provider Reimbursement Review Board erred in concluding that it lacked jurisdiction over the hospital's appeal to the Board because Bethesda and Deaconess made no claim for reimbursement to the intermediary.[23] The court recognized that "the PRRB concluded that, under the statutory administrative review scheme, 42 U.S.C. § 1395*oo*(a)-(f), it lacked jurisdiction over their appeal from the final determination of the fiscal intermediary because Bethesda and Deaconess made no claim for reimbursement to the intermediary." 609 F.Supp. at 1364. However, the court concluded that the "grant of authority to the PRRB to review determinations

made by the fiscal intermediary contained in section 1395*oo* (d) is more appropriately limited to those items disclosed in the cost report such that all figures necessary to any calculations are contained in the cost report." 609 F.Supp. at 1368. Therefore, "the PRRB erred in concluding that it had no jurisdiction to review Bethesda and Deaconess Hospitals' claims for reimbursement of self-disallowed costs." *Id.*

Applying to section 1395*oo* (d) the statutory rule of construction that words of a statute should be given their "ordinary and intended meaning," the court declared with reference to section 1395*oo* (d):

> [A] requirement of an overt claim for reimbursement to the fiscal intermediary as a condition precedent to PRRB review is implicit at best, and in apparent contradiction to the broad grant of authority to the PRRB to revise "matters covered by [the] cost report even though such matters were not considered by the intermediary in making such final determination."

609 F.Supp. at 1365. However, as this court's analysis of section 1395*oo* (a), *supra* part I.C. demonstrates, one must look at section 1395*oo* (a) as well as § 1395*oo* (d) to determine whether there is "a requirement of an overt claim for reimbursement to the fiscal intermediary as a condition precedent to PRRB review." As previously held, the pertinent language of section 1395*oo* (a) requires as a condition precedent for a provider to obtain a Board hearing that the provider show that it is "dissatisfied with a final determination" of the intermediary. Moreover, as previously concluded, the foregoing provision of section 1395*oo* (a) requires that, to show its dissatisfaction, the provider must have first made a claim or otherwise notified its intermediary as to the item for which it sought and was denied cost reimbursement.[24] We

---

**23.** Plaintiffs Bethesda and Deaconess did not file a claim with the fiscal intermediary for reimbursement for malpractice insurance costs. Instead, "Bethesda and Deaconess filed a cost report with the fiscal intermediary in compliance with the new Malpractice Rule, and hence 'self-disallowed' reimbursement for the addi-

tional portion of malpractice insurance costs allowable under the old rule." 609 F.Supp. at 1364.

**24.** The district court in *Bethesda* noted that under section 1395*oo* "the PRRB may conduct an

therefore decline to accept the reasoning in *Bethesda Hospital.*

## III.

Attention is now turned to the remaining issue raised by the parties. In its motion for summary judgment before the district court, the Hospital stated:

> [S]ubsequent to the filing of its third and final cost report ... the Hospital learned of an important judicial decision which held that the Pennsylvania State University could obtain reimbursement for its costs incurred at similarly situated clinics on behalf of Medicare-eligible patients. See *The Pennsylvania State University v. Secretary, PRRB* Dec. No. 79–D89, CCH Medicare and Medicaid Guide, ¶ 30,-379, *reversed and remanded* (D.C.M.D. Pa., 1981)., CCH Medicare and Medicaid Guide, ¶ 30,989, and 79–D89R, CCH Medicare and Medicaid Guide, ¶ 31,635.

On October 30, 1981, the Hospital filed its third and final cost report for fiscal years ending June 30, 1979, June 30, 1980 and June 30, 1981. The Secretary points out that the Notice of Program Reimbursement (NPR) was not issued in this case until September 30, 1982, and states that until this time "the provider clearly could have sought to have its cost report amended by the intermediary."[25]

It is recognized that a provider may seek to amend a cost report filed with the inter-mediary prior to the intermediary's issuance of a Notice of Program Reimbursement (NPR). *University of Michigan Hospitals v. Heckler,* 609 F.Supp. 756, 761 (E.D.Mich. 1985). However, whether or not under HIM–13–2 § 2631.2A, *supra* note 25, the Hospital could have amended its self-disallowed clinic costs to request reimbursement need not be pursued. The failure of the provider to seek such amendment moots the point.

The intermediary issued its Notice of Program Reimbursement on September 30, 1982. By letter of March 30, 1983, the provider requested a Board hearing. This is the first time that it sought reimbursement for the interns' and residents' education costs.

As noted by the Secretary, the Medicare regulations and the Intermediary Manual make provision for reopening an intermediary's final determination. Thus 42 C.F.R. § 405.1885(a) provides, as here pertinent, "a determination of an intermediary ... may be reopened with respect to findings on matters at issue in such determination ... by such intermediary ... on motion of such intermediary ... or on the motion of the provider affected by such determination ... to revise any matter in issue at any such proceedings." The request must be made within three years of the date of the notice of the intermediary. The Medi-

---

administrative review of the intermediary's final decision," and then stated:

> Perhaps less obvious but nevertheless evident is the legislative intent that the PRRB review need not be limited to costs claimed by the provider to the intermediary in the cost report.

609 F.Supp. at 1365.

A search of the House and Conference Reports of the legislative history, highlighted *supra* part I.B., has revealed no expressed intent to allow the PRRB review of costs not claimed by a provider; and no such intent may be implied from the legislative history. To the contrary, as quoted earlier, the House Report shows that the committee believed it was "desirable to prescribe in law a specific procedure for settling *disputed* final determinations" (emphasis added). A final determination would only be "disputed" if the provider claimed a cost payment to be reimbursable and the fiscal intermediary, in its final determination, either disallowed the claim as not reimbursable or ignored the claim.

**25.** 42 C.F.R. § 405.453(f) provides, in pertinent part:

> Amended cost reports to revise cost report information which has been previously submitted by a provider may be permitted or required as determined by the Health Care Financing Administration.

The Medicare Intermediary manual, HIM–13–2 § 2631.2A, states:

> A provider may file or an intermediary may require an amended cost report to:
> 1. correct material errors detected subsequent to the filing of the original cost report,
> 2. comply with the health insurance policies or regulations,
> 3. reflect the settlement of a contested liability.

care Intermediary Manual, HIM–13–2 § 2631, thus defines "reopening":

> For the purposes of this section the term "reopening" means an affirmative action taken by an intermediary ... to re-examine or question the correctness of a determination or decision otherwise final....

> For example, under the provisions of this paragraph an amended cost report accepted by an intermediary after its issuance of the initial determination of the amount of program reimbursement would be deemed to constitute a request by the provider to reopen an intermediary's determination.

Section 2631.2 of the Intermediary Manual specifies these circumstances under which a determination may be reopened:

> *2631.2 Reopening Final Determination on Cost Reports*

> Whether or not the intermediary will reopen a determination, otherwise final, will depend upon whether new and material evidence has been submitted, or a clear and obvious error was made, or the determination is found to be inconsistent with the law, regulations and rulings, or general instructions.[26]

The Secretary argues that under the "reopening" provisions "the provider clearly had an opportunity to seek to claim these costs after the issuance of the NPR but had failed to do so." To the contrary, the Hospital asserts that its "situation did not entitle it to reopen or amend its cost reports, 42 C.F.R. §§ 405.453(f), 405.1885, and thus neither of those routes were pursued." The Hospital adds:

> Had the Hospital attempted to pursue a reopening or an amendment, it would have had no remedy to the Intermedi-

ary's denial of such request since such decisions are final and non-appealable. The Hospital refers to C.F.R. § 405.1885(c), which states:

> Jurisdiction for reopening a determination or decision rests exclusively with that administrative body that rendered the last determination or decision.

*University of Michigan v. Heckler, supra,* 609 F.Supp. at 762, rejected a claim of the group of hospitals that "fiscal intermediaries should not possess complete discretion over hospitals' requests to reopen." [27]

Because the University of Cincinnati Hospital did not seek to reopen the NPR after the intermediary issued the NPR on September 30, 1982, the question of reopening is not raised in this case. Therefore, this question is not properly before this court and will not be resolved.

### IV.

Having concluded that the district court committed prejudicial error as explained and specified in parts I and II, the district court's ruling is reversed. The case is remanded to the district court to enter an order granting the Secretary's motion for summary judgment.

MERRITT, Circuit Judge, concurring.

Since this case was argued and submitted on April 25, 1985, Judge Engel on October 6, 1986, in his unanimous opinion for the Court has decided the issue under submission here.

*Baptist Hospital East v. Secretary,* 802 F.2d 860, decides precisely the same issue presented on this appeal. We are controlled by that decision. For that reason, I concur in the result reached in the opinion circulated by Judge Thomas.

---

**26.** The regulation continues:
Information submitted in support of an amended cost report or the audit findings on a previously unaudited cost report (§ 2004) could provide new and material evidence on which to base a reopening.

**27.** Judge Joiner reasoned:
The reopening procedures of the Medicare regulations reflect the judgment that the pro-

viders' ability to add claims to cost reports must end at some point. The issuance of the NPR was selected as that point. Accordingly, the regulations give the fiscal intermediary complete discretion over requests to alter cost reports that are made after the issuance of the NPR.
*Id.* at 762–63.

NATHANIEL R. JONES, Circuit Judge, concurring.

This Court's decision in *Baptist Hospital East v. Secretary*, 802 F.2d 860 (6th Cir. 1986) addressed the issue before us on this appeal. Because we are controlled by that decision, I concur in the result of Judge Thomas' opinion.